```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
JAMES ANDERSON,                                           :

                        Plaintiff,                        :
                                                               REPORT and RECOMMENDATION
         -against-                                        :
                                                                  08 Civ. 00559 (JSR)(KNF)
DOCTOR ROMANO, DOCTOR                                     :
KOEHOGSMAN, DOCTOR BERNSTEIN,
COMMISSIONER GLENN GOORD,                                 :

                        Defendants.                       :
----------------------------------------------------------x
```

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE JED S. RAKOFF, UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

James Anderson ("Anderson") proceeding pro se, commenced this action, brought pursuant to 42 U.S.C. § 1983 ("§1983"), alleging, inter alia, that Dr. Koenigsmann ("Koenigsmann"),[1] and Dr. Bernstein ("Bernstein") (collectively "the defendants"),[2] employees of the Green Haven Correctional Facility ("GHCF") violated his constitutional rights by exhibiting deliberate indifference to his medical needs. Specifically, Anderson alleges that, in 2004, he was informed that he had tested positive for hepatitis C, in 2001, and was advised to submit to a hepatitis B vaccination, in accordance with the treatment protocol for hepatitis C. Anderson contends: (a) he was not made aware of his 2001 hepatitis C positive test result, until

---

[1] The caption bears an incorrect spelling of Koenigsmann's name.

[2] Anderson also named Commissioner Glenn Goord ("Goord") and Doctor Romano ("Romano"), as defendants. However, Romano, who was Anderson's GHCF treating physician, was never served with a summons and the complaint, and, by an order entered March 9, 2009, all claims asserted against Goord were dismissed.

2004; (b) he was not treated for hepatitis C; and (c) the defendants' failure to inform him of his condition and treat him for hepatitis C has resulted in his experiencing pain, paralysis, and weight loss. The plaintiff also alleges he was transferred to a new correctional facility, despite being placed on "medical hold," as retaliation for filing grievances against the defendants.

Before the Court is the defendants' motion for summary judgment, made pursuant to Federal Rule of Civil Procedure 56. The defendants contend they are entitled to the relief they seek because: (1) they were not involved personally in the plaintiff's treatment; (2) no deprivation of medical care, sufficiently serious to implicate the Constitution, occurred; (3) they were not deliberately indifferent to serious medical needs of the plaintiff; and (4) the qualified immunity doctrine shields them from liability to the plaintiff for civil damages. The plaintiff has not opposed the defendants' motion. The motion is analyzed below.

## II. BACKGROUND AND PROCEDURAL HISTORY

The following facts are undisputed:

From 1997, through September 2, 2004, the plaintiff was incarcerated at GHCF. Koenigsmann is a Regional Health Services Director for New York's Department of Correctional Services ("DOCS"). The region over which he has jurisdiction includes GHCF. Koenigsmann was never Anderson's treating physician, and he did not provide any medical services to Anderson. Bernstein is a physician employed by DOCS. He was assigned to GHCF during the time period relevant to this action. Anderson is unsure whether Bernstein ever treated him at GHCF.

In March 2001, Anderson underwent a blood test; the test result indicated the presence of hepatitis C antibodies. On or about March 8, 2001, the positive hepatitis C test result was shared

with Anderson, by GHCF medical personnel.  The treating physician directed that Anderson be given the hepatitis B vaccine to prevent infection with that virus.  He also recommended that Anderson be seen by an infectious disease specialist.  Anderson refused to be treated with the hepatitis B vaccine.  On March 9, 2001, he executed a "Refusal of Medical Examination and/or Treatment" form, before a witness, acknowledging he "ha[s] Hep C antibodies in system [and refusing] B innoculation."  Anderson also refused to see an infectious disease specialist.  Anderson's refusal to see the specialist is documented by an "Ambulatory Health Record," dated March 8, 2001.

     The treating physician ordered that additional blood tests be performed on Anderson, to determine the plaintiff's viral load and genotype.  On March 12, 2001, the plaintiff did not appear for scheduled blood tests, and on March 13, 2001, he refused to have the laboratory work, ordered by his treating physician, performed.  In June 2004, before he was transferred from GHCF, the treating physician and a "resident nurse" discussed, with Anderson, his March 2001 blood test result, and whether he wished to be treated for hepatitis C.  At that time, the plaintiff declined to take the hepatitis B vaccine and refused treatment for hepatitis C.  On June 16, 2004, Anderson signed another examination and treatment refusal form, in which he stated: "[a]t this time, I would like to think about my decision, concerning treatment for Hep-C.  I have been for the first time been [sic] advised about my condition."

     In August 2004, Anderson refused to see a specialist, for hepatitis C treatment, and, on August 2, 2004, signed a statement indicating that he "want[ed] continued blood work (no treatment at present).  I will however keep a close check on any possible changes, thus far all test results have been good."

On August 8, 2004, Anderson refused treatment stating: "If in fact I accept treatment I want to build my body back up first. (As per the book). I've just started getting my weight & strength back." On August 10, 2004, Anderson met with "Dr. Stark," who reported that Anderson had no questions about hepatitis C, at that time. On or about August 30, 2004, Anderson submitted to an abdominal sonography. It showed that Anderson's liver appeared normal.

On or about September 2, 2004, Anderson was transferred from GHCF to Auburn Correctional Facility. As a consequence, Anderson was no longer housed in a facility where the defendants worked. Anderson continued to undergo medical testing. The results revealed that: (a) as of July 2006, Anderson's hepatitis C infection was "chronic and stable;" and (b) as of August 2006, Anderson's liver was "still 'unremarkable without focal lesions,'" and "'no evidence of intrahepatic biliary dilation'" was observed.

Anderson continued to refuse hepatitis C treatment, after he left GHCF. He testified, during a deposition taken in connection with this action, that he "does not believe that he has hepatitis C, and would 'emphatically' refuse to be treated for that disease today." Anderson also testified that he believes Bernstein "had control in the ability to influence my treatment, my diet, every facet in my health, but he choose to ignore it." Anderson conceded, during his deposition, that he was not treated by Koenigsmann; he was less confident about being treated by Bernstein, stating that he was unsure whether Bernstein treated him at GHCF. However, the plaintiff's medical records do not reveal that either Bernstein or Koenigsmann treated Anderson, and those records do not indicate that either defendant reviewed Anderson's treatment or diagnosis.

5

### III.  DISCUSSION

Summary judgment may be granted in favor of the moving party "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(c)(2); see also D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998). When considering a motion for summary judgment, "[t]he court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." L.B. Foster Co. v. America Piles, Inc., 138 F.3d 81, 87 (2d Cir. 1998).

The moving party bears the burden of showing that no genuine issue of material fact exists.  See Huminski v. Corsones, 396 F.3d 53, 69 (2d Cir. 2005).  "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.  An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 212 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 [1986]).  Once the moving party has satisfied its burden, the non-moving party must come forward with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

In order to defeat a motion for summary judgment, the non-moving party cannot merely rely upon the allegations contained in the pleadings that raise no more than "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

judgment." Anderson, 477 U.S. at 247-48, 106 S. Ct. at 2510 (emphasis omitted). The non-moving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." Id. at 256, 106 S. Ct. at 2514. Summary judgment should only be granted if "no rational jury could find in favor of the nonmoving party." Heilweil v. Mount Sinai Hospital, 32 F.3d 718, 721 (2d Cir. 1994).

If the non-moving party fails to oppose a summary judgment motion, "summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. P. 56(e)(2). However, when the non-moving party does not submit a response to a summary judgment motion, "the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001). "If the evidence adduced in support of the summary judgment motion does not meet [the movant's] burden, summary judgment must be denied even if no opposing evidentiary matter is presented." Id. 274 F.3d at 681 (citation, internal quotation marks and emphases omitted). In determining whether the moving party has demonstrated no genuine issue for trial exists, "the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement," but "must be satisfied that the citation to evidence in the record supports the assertion." Vermont Teddy Bear Co., Inc. v. 1-800 BEARGRAM Co., 373 F.3d 241, 244 (2d Cir. 2004).

The defendants served the plaintiff with a "notice to pro se litigant opposing motion for summary judgment," which includes a warning that "THE CLAIMS YOU ASSERT IN YOUR COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF YOU DO NOT RESPOND TO THIS MOTION." The plaintiff did not respond to the defendants' summary judgment motion.

7

Personal Involvement

In order to establish a claim of deliberate indifference to his medical needs under the Eighth Amendment, an inmate "must demonstrate that the defendants acted or failed to act while actually aware of a substantial risk that serious inmate harm would result." Farid v. Ellen, 593 F.3d 233, 248 (2d Cir. 2010) (citation, internal quotation marks and alterations omitted). This standard has an objective element, which "measures the severity of the alleged deprivation," and a subjective element, which "ensures that the defendant prison official acted with a sufficiently culpable state of mind." Smith v. Carpenter, 316 F.3d 178, 183-84 (2d Cir. 2003).

"In this Circuit, personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977). "[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." Black v. Coughlin III, 76 F.3d 72, 74 (2d Cir. 1996). For the purpose of a summary judgment motion, personal involvement, under § 1983, in this Circuit, includes "direct participation" in the alleged violation or "creation of a policy or custom under which unconstitutional practices occurred." Id. (citing Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)).

Anderson testified that, during his stay at GHCF, he was never personally treated by Koenigsmann for any medical condition and is "not sure" whether Bernstein ever treated him for a medical condition. None of the medical documentation in the record establishes that either Koenigsmann or Bernstein participated, personally, in any way, in rendering medical treatment to Anderson, while he was at GHCF. Furthermore, Anderson made no claim that the defendants

8

acted based on a purposefully discriminatory policy.  Moreover, no evidence in the record establishes, as Anderson alleges, that his transfer from GHCF is connected to grievances he filed or that the defendants played any role in the determination to transfer Anderson.  These facts undermine Anderson's claim that the defendants were deliberately indifferent to his serious medical needs, because they failed to inform him of his hepatitis C infection, in 2001, and failed to treat it, or that they retaliated against him by having him transferred from GHCF.

## IV.  RECOMMENDATION

Since the record does not demonstrate the defendants' personal involvement in the alleged constitutional deprivations, the Court need not address the remaining claims.  The Court recommends that the defendants' summary judgment motion, Docket Entry No. 32, be granted.

## V.  FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff, 500 Pearl Street, Room 1340, New York, New York, 10007, and to the chambers of the undersigned, 40 Foley Square, Room 540, New York, New York, 10007.  Any requests for an extension of time for filing objections must be directed to Judge Rakoff.  FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.  See Thomas v. Arn, 474 U.S. 140 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank

v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York  
October 22, 2010

Respectfully submitted,

*Kevin Nathaniel Fox*  
KEVIN NATHANIEL FOX  
UNITED STATES MAGISTRATE JUDGE

Copies mailed to:

James Anderson  
Daniel A. Schulze, Esq.